UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM CONROY and NAUREEN COONEY, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF CHICAGO, a municipal corporation,<br><br>    Defendant. | No. 07 C 6537<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

**I.    BACKGROUND**

Plaintiffs in this opt-in action are employees of the City of Chicago Office of Emergency Management and communication. They claim that they and others are non-exempt under the Fair Labor Standards Act of 1938, 29 U.S.C. § 207, *et seq.*, and that as such, they are entitled to overtime payment for work in excess of forty hours per week. Plaintiffs seek overtime payments for a period of three years prior to filing of the complaint, as well as liquidated damages in the amount of double overtime payments due, pursuant to 29 U.S.C. § 216(b).

**II.    PRELIMINARY ISSUES**

    **A.    Defendant's Motion to Strike Plaintiffs' Responses Filed**

          **Pursuant to Local Rule 56.1(b)(3)(B)**

Defendant argues that several of its factual assertions should be admitted because Plaintiffs have failed to properly respond to them. First, Defendant claims that in some of their responses Plaintiffs either "fail to cite specific evidentiary materials justifying their denials," or

cite to pages of a deposition transcript that do not address Defendant's factual assertion. Since, in these responses, Plaintiffs provide no substantive explanation as to how the cited materials address Defendant's factual assertions, Defendant argues that the assertions should be admitted. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("If the cited material does not clearly create a genuine dispute over the movant's allegedly undisputed fact, the nonmovant should provide an explanation. . . . [A] nonmovant's failure to adhere to these requirements is equivalent to admitting the movant's case.") This allegation is true with regard to Plaintiffs' response to statements 3, 10 - 12, 19, and 20. Plaintiffs fail to cite to any supporting material in their response to statement 28. Because Plaintiffs have failed to properly respond to these assertions, they are deemed admitted.

Next, Defendant argues that Plaintiffs make several impermissible argumentative denials, which should be stricken. This is true with regard to Plaintiffs' responses to statements 13-16, and 22. To the extent that these denials consist of non-responsive legal arguments that do not controvert Defendant's corresponding assertions, they are stricken.[1]

    **B.**    **Defendant's Motion to Strike Portions of Plaintiffs' Local Rule 56.1(b)(3)(c) Statement of Additional Facts**

Defendant objects to nearly every paragraph of Plaintiffs' Statement of Additional Facts on the basis that it is either unsupported by the cited material or calls for a legal conclusion. I agree that statements 7, 33, 35, 37 and 40[2] are unsupported by the cited materials and for this

---

[1] Plaintiffs also object to several of these assertions on the ground that they are misstatements of the cited record. Such an objection is not improper and is not stricken.

[2] In support of statement 40, Plaintiffs cite to deposition testimony in which Plaintiffs explain that they know of at least one incident of pay docking involving Traffic Management Authority

reason they are stricken. Furthermore, statements 9-13, 16, 21, and 32 are also unsupported by the record in that they are generalizations of testimony that was made in reference to a specific person or incident. The statements will be disregarded to the extent that they apply to persons or incidents not referenced in the supporting materials.

### III.     STATEMENT OF FACTS

Plaintiffs William Conroy and Naureen Cooney, both members of an opt-in class, are employees of the Traffic Management Authority ("TMA") section of the City of Chicago's Office of Emergency Management and Communications ("OEMC"). They are both currently Superintendents of Special Traffic Services. From June 2005 to January 2006, and August 2007 to April 2008, Cooney served as a Supervising Traffic Control Aid ("Supervisor"), and in between these stints she served as Acting Superintendent of Special Traffic Services.

In a nutshell, OEMC is responsible for Chicago's public safety communications system which coordinates emergency response resources, the non-emergency 311 system, disaster preparedness and traffic management. TMA, one subdivision of the OEMC, oversees centralized traffic control services, and directs traffic at airports, in the Chicago Loop business district, and at large public events in the city.

---

supervisors. Plaintiffs provide no supporting affidavits or documentation to corroborate the statements. Plaintiffs' knowledge of the alleged docking appears to come from the complaints of other employees. Because Plaintiffs are seeking to admit these statements for their truth, they are inadmissible hearsay. "[H]earsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial. . . ." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Plaintiffs' statements do not appear to fall under any hearsay exception, as required to render them admissible. Even if they were admissible, they are wholly unsupported. Without any other supporting evidence, the statement must be stricken.

In his role as a Superintendent, Conroy:

(1) gives subordinates "general instructions what to do in their posts," and directs supervisors "instructing them on what was to be done[;]"

(2) "determines appropriate methods and allocation of personnel for vehicle and crowd control during special events and emergencies[;]"

(3) assigns numbers of Traffic Control Aides ("TCA"), and at times, actual personnel, to areas under his supervision, and directs supervisors in assigning subordinates to their posts during large-scale events in the city;

(4) oversees and approves the creation of his subordinates' schedules and approves requests for time off;

(5) during large-scale events, regularly surveys areas of assignment where TCAs are to be posted "to make sure that there [are] no glitches," or obstructions as a result of street closures;

(6) during large-scale events, manages personnel, arranging for lunch and restroom breaks pursuant to his own discretion and based on conditions in the field;

(7) during large-scale events, monitors traffic conditions, prepares for and changes configuration of street closures, and determines how and whether to move TCAs from post to post depending on conditions in the field, pursuant to his own discretion;

(8) supervises two Supervising Traffic Control Aides, who each supervise 20-25 TCAs per shift.

In her role as a Supervising Traffic Control Aide, Cooney:

(1) supervised and coordinated TCAs;

(2) made work assignments and monitored TCAs;

(3) monitored daily manpower and reassigned staff to adjust for shortages or unanticipated crowds;

(4) trained staff;

(5) conducted performance evaluations of subordinates.

Upon returning to her post after her stint as Acting Superintendent, Cooney took on the added duties of Administrative Supervisor for the Central Business District. Cooney testified that this administrative work took up about 40% of her time.

Plaintiffs claim that Defendant unjustly treats them as exempt from Fair Labor Standards Act overtime provision, and that they are entitled to overtime pay. Defendant moves for summary judgment, claiming that Plaintiffs are properly compensated on a salary basis. For the following reasons, Defendant's motion is granted in part.

## IV.  STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 5(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the non-moving party's version of any disputed fact only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

**V. ANALYSIS**

Under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, employers must pay employees at least time-and-a-half for any hours worked over forty in a week. *Id.* at § 207. However, this requirement is subject to several exemptions, including an exemption for persons "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "Such exemptions are construed narrowly against the employer seeking to assert them." *Perez v. Radioshack Corp.*, 552 F. Supp.2d 731, 736 (N.D. Ill. 2005) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The burden is on the employer to establish that an employee falls within an FLSA exemption. *See Roe-Midgett v. CC Services, Inc.*, 512 F.3d

865, 869 (7th Cir. 2008). "Determining the duties encompassed by an employee's position is a question of fact; determining the appropriate FLSA classification is a question of law." *Id.* Defendants argue that Plaintiffs are exempt from the Fair Labor Standard Act's minimum wage and maximum hour requirements under both the executive or administrative exemptions, 29 U.S.C. § 213(a)(1), and that they have been properly compensated on a salary basis.

### A. The Administrative Exemption

In order to qualify for the administrative exemption under section 213(a)(1), an employee must be employed in a bona fide administrative capacity. According to federal regulations, this means any employee:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a)(1)-(3) (2009).

#### 1. The salary test

Federal regulation 29 C.F.R. 541.602(a) (2009) provides:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in

>which the employee performs any work without regard to the number of days or hours worked.

Regulation 29 C.F.R. § 541.710(a) (2009) provides for an exception for employees of a public agency:

>An employee of a public agency who otherwise meets the salary basis requirements of § 541.602 shall not be disqualified from exemption under §§ 541.100, 541.200, 541.300 or 541.400 on the basis that such employee is paid according to a pay system established by statute, ordinance or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day. . .

Plaintiffs argue that they are not paid on a salary basis as required by the test because there is a danger that their pay may be docked pursuant to the City's docking policy. Defendant maintains that the docking policy is rooted in public accountability, and supports this claim with an affidavit from the City's Director of Personnel Policies and Utilization at OEMC, John Arvetis. Plaintiffs assert that this policy is used as punishment but provide little supporting evidence for this argument. First, they argue that because Supervisors swiping in seven minutes late were told they would be docked a full fifteen minutes, docking is done as a punishment. However, other available evidence appears to contradict this inference. According to the City Payroll Manual, in order to report a fraction of a day to be docked, the hours must be converted to hundredths of a day, or to two decimal places. This instruction refers the reader to a conversion chart to assist him in this exercise. From the chart it appears that the minimum amount of time that an employee can be docked is one-quarter hour – fifteen minutes. Were a

Supervisor fifteen minutes late, the reasonable inference is that his pay would be docked fifteen minutes, and he would not be "punished" at all.

Furthermore, Arvetis testified that salaried employees are required by OEMC's time monitoring system to keep track of their hours in order to protect tax payer interests and avoid ghost payrolling. This is consistent with Illinois law, which prohibits persons from receiving compensation and benefits "from any local governmental unit . . . by means of a false or fraudulent record, statement, or claim or other willful misrepresentation[.]" 735 ILCS 5/20-102. Where "plaintiffs' compensation [is] consistent with public accountability principles," these employees may still qualify for FLSA exemption. *Demos v. City of Indianapolis*, 302 F.3d 698, 703 (7th Cir. 2002). During his deposition, Deputy Director of TMA, Jack Killackey, testified that Superintendents would be docked for leaving work early if they had no available vacation time, personal time, or other benefit time. This, too, is consistent with principles of public accountability, rather then discipline. An employee is allowed only so much paid time off. Once he has no such time available, he cannot be paid for time he is absent.

Plaintiffs point to Arvetis's deposition testimony in which he discusses "administrative leave," a kind of discretionary time off not based on accrual. While such a system may very well exist, it does not prove that the docking policy is not rooted in public accountability, only that "administrative leave" may itself violate the public accountability policy. Plaintiffs provide no evidence that the docking policy is, in fact, a disciplinary deduction. Furthermore, neither of the named plaintiffs has suffered from any such docking. They allege that they know of others - namely supervisors - who have, yet Plaintiffs provide no supporting evidence for this claim other than their own deposition testimony that they were told this was the case. "[H]earsay is

9

inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial. . . ." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Plaintiffs' statements do not appear to fall under any hearsay exception, as required to render them admissible and are not supported by admissible evidence. Although Plaintiffs need not show that deductions have actually been made, and need only show that they are subject to impermissible deductions in order to prove that they are not exempt, *Klein v. Rush-Presbyterian-St. Luke's Med. Center*, 990 F.2d 279, 286 (N.D. Ill. 1993), supporting evidence of any actual docking might have helped to substantiate their claim that this docking was indeed disciplinary and impermissible, depending on the circumstances of the deduction. However, Plaintiffs' naked allegation that the docking is a form of punishment is not enough to refute Defendant's evidence that it isn't. Therefore, there is no genuine issue of material fact as to whether the docking policy is rooted in public accountability, and Defendants have shown that salary basis prong is satisfied in this case.

### 2. Primary duties and the exercise of discretion

To satisfy the primary duties prong of the test, Defendant must show that Plaintiffs' "primary dut[ies] are the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2) (2006). Under federal regulations:

> "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked

> and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Plaintiffs agree that both Superintendents and Supervisors spend the majority of their time in the field supervising subordinates. However, Plaintiffs dispute that these primary responsibilities can be considered directly related to "the management or general business operations" of the City. Plaintiffs' duties, they argue, are not the type performed by employees in the course of servicing a business.

> The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. § 541.201(a) (2009). According to federal regulation,

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700 (2009).

I agree with Defendant's contention that Superintendents' primary duties are directly related to the management of the OEMC. It is largely undisputed that Superintendents: instruct subordinates; determine appropriate methods and allocation of personnel for vehicle and crowd control during special events and emergencies; assign numbers of Traffic Control Aides

("TCA"), and at times, actual personnel, to areas under their supervision; oversee and approve the creation of subordinates' schedules and approve requests for time off; during large-scale events, regularly survey areas of assignment where TCAs are to be posted "to make sure that there [are] no glitches," or obstructions as a result of street closures; manage personnel, arranging for lunch and restroom breaks pursuant to their own discretion and based on conditions in the field; monitor traffic conditions, prepare for and change configuration of street closures; and determine how and whether to move TCAs from post to post depending on conditions in the field, pursuant to their own discretion. As a Superintendent, Plaintiff Conroy supervises two Supervisors, who each supervise twenty to twenty-five TCAs per shift. All of these tasks are considered management activities under the federal regulation. *See* DOL Advisory Letter, 2005-40, 2005 WL 3308611 (Oct. 14, 2005) (explaining that although police officers and firemen are typically not exempt under FLSA, Fire Battalion Chiefs, Police Lieutenants, and Police Captains are exempt executives, and that because Fire Battalion Chiefs "manage the administrative and operational functions of the assigned section while integrating the Department's goals into day-to-day operation" and engage in management duties by "enforcing and implementing rules, regulations, procedures and values of the Fire Department; directing activities of personnel; taking proper action in all emergency situations until relieved by higher ranking officer; coordinating pre-fire planning, company inspection activities, and conducting routine fire cause investigations; preparing, reviewing and processing reports and records; and assisting in necessary research and preparation of budget needs."). Furthermore, Superintendents make significantly more money than Supervisors, another important factor in determining whether their primary duties are managerial in nature.

To qualify for an administrative exemption, Defendants must also demonstrate that Plaintiffs' primary dut[ies] include[ ] the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(3). Superintendent Plaintiffs exercise their discretion when managing personnel, arranging for breaks, changing configurations of street closures, and determining how and whether to move TCA from post to post. It is worth noting that the job description for the Superintendent position requires, as a minimum qualification, the "[a]bility to exercise good judgment in evaluating situations and making decisions," further corroborating the claim that Superintendents exercise discretion in matters of consequence to the TMA.

Federal regulation 29 C.F.R. § 541.3(b)(1) excludes from the section 13(a)(1) exemptions police officers and other emergency responders whose primary duties are to investigate crimes and put out fires because their primary duties are not the "performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction or the performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor . . ." The same can be said of Superintendents and Supervisors. Plaintiff Cooney testified that he relied on his "experience" in making certain discretionary decisions. It is true that Superintendent Plaintiffs regularly make decisions based not on the application of a set formula or procedure, and are required to make decisions on the fly due to ever-changing conditions in the field, but so too do police officers and firefighters.

However, Superintendent Plaintiffs are less like those working on a manufacturing line or selling a product, and more like those who perform work related to running the factory or retail store; they are more like Fire Battalion Chiefs and less like firemen. In *Monroe Firefighters*

13

*Association v. City of Monroe*, 600 F.Supp. 2d 790, 803-804 (W.D. La. 2009), the court found that District Fire Chiefs who had the discretion to require the fire stations and captains to engage in fire drills and, at emergency calls, exercised discretion and independent judgment to address the needs of the situation had discretion with regard to matters of significance.  The court also found that Deputy Fire Chiefs who exercised discretion in staffing assignments exercised their judgment and discretion with regard to matters of significance.  *Id.*  Both groups, the court said, were exempt under the administrative and executive exemptions.  *Id.* at 801-804.  Similarly, Superintendent Plaintiffs in this case exercise discretion with regard to staffing assignments and in-the-field emergencies; they too exercise discretion in matters of significance.

      This does not appear to be so, however, for Supervisors.  In her role as a Supervisor, Cooney supervised and coordinated TCAs, made work assignments for and monitored TCAs, monitored daily manpower and reassigned staff to adjust for shortages or unanticipated crowds, trained staff, and conducted performance evaluations of subordinates, again, all considered to be management activities under the regulation.  In this position, it appears that she exercised less "discretion" than the Superintendents, implementing their directives.  From the evidence before me, it seems that Supervisors typically do not participate in planning meetings, do not approve schedules and time off requests, and do little in the way of reporting.  It is true that they exercise some independent judgment in certain matters, primarily deciding which employees, based on their strengths, are best-suited for certain posts and whether and when to put up traffic barricades, ensuring the safety of pedestrians.  However, Supervisors do not appear to exercise the bulk of the discretion with regard to the management of TMA operations in the field.  They are supervised by the Superintendents and implement the decisions that are made as a result of the Superintendents' discretion.

For the foregoing reasons, I find that the Superintendent Plaintiffs qualify for the administrative exemption under section 541.213(a)(1), however I must deny Defendant's motion for summary judgment as to the administrative exemption of Supervisor Plaintiffs. The record in this case needs further development as to the actual day-to-day activities of Supervisors.[3]

B.  **The Executive Exemption**

In order to qualify for the executive exemption under section 541.213(a)(1), an employee must be employed in a bona fide executive capacity. According to federal regulations, this means any employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

---

[3] Several of the duties discussed in deposition testimony, e.g. attending meetings, scheduling, etc, were specific to Cooney in her role as Supervisor and to another of the nineteen Supervisors selected to do administrative work. According to Cooney, she spent about 40% of her time attending to such duties. The reasonable inference, in Plaintiffs' favor, is that she spent the remaining 60% of her time engaged in non-exempt duties. Plaintiffs have not moved for summary judgment here, however, even if they had, I would not be inclined to grant their motion with regard to the Supervisor plaintiffs since the 50% rule of thumb articulated in 29 C.F.R. 541.700(b) (2009) is not dispositive. It is possible that "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id.* So with regard to Plaintiff Cooney specifically, in her role as Supervisor, more information is necessary.

Under this test, the Superintendent Plaintiffs do qualify as exempt. As I have discussed the salary test supra, I need not address it here. Also discussed *supra*, Defendants have shown that Plaintiffs' primary duties are the management of a "customarily recognized department" within the OEMC - namely, the TMA.[4] Plaintiffs argue that they do not meet the fourth prong of the test because they cannot hire, fire or promote subordinates. Furthermore, Plaintiffs argue, the one-word evaluations they are authorized to conduct are in no way binding and can be disregarded by the Deputy Director in his decision to grant a pay increase. According to 29 C.F.R. § 541.105, "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." In this case, Plaintiff Cooney testified that as a Superintendent, she provides Deputy Director Killackey with her evaluation and recommendation as to whether a subordinate qualifies for a step increase. And while Killackey has the ultimate authority to grant the increase, Plaintiff Cooney testified that she could not remember a time when he disagreed with one of her recommendations.

For the foregoing reasons, I find that the Superintendent Plaintiffs qualify for the executive exemption under section 541.213(a)(1), however, because further development of the record is necessary with regard to the duties of Supervisor Plaintiffs and Plaintiff Cooney specifically, I must deny Defendant's motion for summary judgment as to the executive exemption of Supervisor Plaintiffs.

---

[4] Under federal regulation 29 C.F.R. 541.103, "[a] customarily recognized department or subdivision must have a permanent status and a continuing function." The phrase "is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function."

## VI. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted as to Plaintiff Conroy and the Superintendent Plaintiffs and denied as to Plaintiff Cooney in her role as Supervisor and the Supervisor Plaintiffs.

ENTER:

_James B. Zagel_
James B. Zagel
United States District Judge

DATE: June 12, 2009